**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES WALSH,<br><br>    Plaintiff,<br><br>  v.<br><br>HERITAGE-CRYSTAL CLEAN, INC., BRIAN RECATTO, FRED FEHSENFELD, JR., CHARLES E. SCHALLIOL, ROBERT W. WILLMSCHEN, JR., JIM SCHUMACHER, BRUCE BRUCKMANN, and MARY PAT THOMPSON,<br><br>    Defendants. | Case No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff James Walsh ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.  This is a stockholder action brought by Plaintiff against Heritage-Crystal Clean, Inc. ("Crystal Clean" or the "Company") and the members of Crystal Clean's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Crystal Clean to an investment affiliate of J.F. Lehman & Company ("JFLCO") (the "Proposed Transaction").

2.      On July 19, 2023, Crystal Clean entered into an Agreement and Plan of Merger with JFL-Tiger Acquisition Co., Inc. ("Parent") and JFL-Tiger Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement").  Parent and Merger Sub are each affiliated with JFLCO.  Pursuant to the terms of the Merger Agreement, JFLCO will acquire Crystal Clean for $45.50 in cash per share of Crystal Clean common stock.

3.      On August 31, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Crystal Clean stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Stifel, Nicolaus & Company, Incorporated ("Stifel"); (iii) potential conflicts of interest faced by the Company's additional financial advisor William Blair & Company L.L.C. ("Blair") and Company insiders; and (iv) the background of the Proposed Transaction.

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Crystal Clean stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.      The special meeting for Crystal Clean stockholders to vote on the Proposed Transaction is currently scheduled for October 10, 2023.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Crystal Clean's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore,

Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Crystal Clean's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of shares of Crystal Clean common stock.

10.      Defendant Crystal Clean is a Delaware corporation, with its principal executive offices located at 2000 Center Drive, Suite East C300, Hoffman Estates, Illinois 60192.  Crystal Clean's shares trade on the Nasdaq Global Select Market under the ticker symbol "HCCI."

11.      Defendant Brian Recatto has been President, Chief Executive Officer, and a director of the Company at all relevant times.

12.     Defendant Fred Fehsenfeld, Jr. has been Chairman of the Board and a director of the Company at all relevant times.

13.     Defendant Charles E. Schalliol has been a director of the Company at all relevant times.

14.     Defendant Robert W. Willmschen, Jr. has been a director of the Company at all relevant times.

15.     Defendant Jim Schumacher has been a director of the Company at all relevant times.

16.     Defendant Bruce Bruckmann has been a director of the Company at all relevant times.

17.     Defendant Mary Pat Thompson has been a director of the Company at all relevant times.

18.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19.     Through its subsidiary, Crystal Clean provides parts cleaning, hazardous and non-hazardous waste, and used oil collection services to small and mid-sized customers in the industrial and vehicle maintenance sectors in North America.  The Company operates through two segments: Environmental Services and Oil Business.  The Environmental Services segment offers parts cleaning, containerized waste management, wastewater vacuum, antifreeze recycling, emergency and spill response, and industrial and field services.  The Oil Business segment engages in the collection of used oil, the sale of recycled fuel oil, and used oil filter removal and disposal

4

activities, as well as the re-refining of used oil into lubricant base oil and other products.  Crystal

Clean also collects and disposes wastewater.  As of December 31, 2022, the Company operated

through 105 branches serving approximately 104,000 customer locations.

**The Proposed Transaction**

20.     On July 19, 2023, Crystal Clean announced that it had entered into the Proposed

Transaction, stating, in relevant part:

> HOFFMAN ESTATES, Ill.–(BUSINESS WIRE)–Heritage-Crystal Clean, Inc.
> (Nasdaq: HCCI) ("Crystal Clean"), a leading provider of parts cleaning, hazardous
> and non-hazardous waste services, used oil re-refining, antifreeze recycling,
> industrial and field services, and emergency and spill response services, today
> announced that it has entered into a definitive merger agreement to be acquired by
> an investment affiliate of J.F. Lehman & Company ("JFLCO"), a leading private
> equity investment firm focused on the aerospace, defense, maritime and
> environmental sectors, in an all-cash transaction that values Crystal Clean at
> approximately $1.2 billion.
>
> Under the terms of the merger agreement, JFLCO will acquire all the outstanding
> shares of Crystal Clean for $45.50 per share in cash. The purchase price represents
> a premium of approximately 24.9% to Crystal Clean's 60-day volume-weighted
> average price on July 19, 2023, the last full trading day prior to today's
> announcement.
>
> "We are pleased to enter into this agreement with JFLCO, which we believe
> represents the best path forward for Crystal Clean to maximize value for our
> shareholders," said Crystal Clean's President and CEO, Brian Recatto. "For more
> than 20 years, we have executed on our mission and thoughtfully grown Crystal
> Clean to become the partner of choice nationwide for premier environmentally-
> sustainable solutions that have a tangible impact for customers, and we are excited
> to embark on this new chapter."
>
> "As a private company, we will have added flexibility and a deeply knowledgeable
> partner in JFLCO that understands our strengths and employee-empowered culture.
> We are grateful to our talented team, who have been instrumental in establishing
> Crystal Clean as the leader we are today and look forward to building on our
> momentum on the path ahead," Mr. Recatto added.
>
> "At a time when businesses across industries are more environmentally conscious
> and highly focused on running cleaner, we are excited to partner with Crystal Clean
> – a clear category leader and unparalleled provider of environmental and waste
> disposal services," said Glenn Shor, Partner at J.F. Lehman & Company. "This

partnership underscores our confidence in Crystal Clean's business, vision and reputation as a trusted provider for a diversified, blue-chip customer base. We look forward to working closely together to best position the Company for sustainable, long-term success."

**Transaction Details**

Crystal Clean's Board of Directors has unanimously approved the merger agreement and recommends that Crystal Clean shareholders vote in favor of the transaction.

The transaction is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including approval by Crystal Clean shareholders and the expiration of the waiting period under the Hart-Scott-Rodino (HSR) Antitrust Improvements Act of 1976. Upon completion of the transaction, Crystal Clean will become a privately held company and shares of Crystal Clean common stock will no longer be listed on the Nasdaq Stock Exchange or trade in any other public market.

Fully committed debt financing in support of the transaction is being provided by Jefferies Finance LLC and Sumitomo Mitsui Banking Corporation. The merger is not subject to any financing condition.

Additionally, The Heritage Group and its affiliates, which collectively hold 26.70% of the Crystal Clean common shares, and Brian Recatto, who holds 3.23% of the Crystal Clean common shares, have each entered into a voting and support agreement with JFLCO pursuant to which each has committed to vote all of its Crystal Clean common shares in favor of the transaction.

The merger agreement provides for a "go-shop" provision under which Crystal Clean and its Board of Directors may actively solicit, receive, evaluate and potentially enter negotiations with parties that offer alternative proposals during a 35-day period following the execution date of the definitive agreement, expiring at 11:59 p.m. Eastern Time on August 23, 2023. There can be no assurance this process will result in a superior proposal. Crystal Clean does not intend to disclose developments about this process until it determines whether such disclosure is appropriate or otherwise required.

**Advisors**

William Blair & Company is serving as financial advisor to Crystal Clean, Stifel delivered a fairness opinion to Crystal Clean with respect to the proposed transaction, and McDermott Will & Emery LLP is serving as legal counsel to Crystal Clean.

Houlihan Lokey, Inc. is serving as lead financial advisor to JFLCO, and Jefferies LLC is also serving as financial advisor to JFLCO; Shearman & Sterling LLP and Jones Day are serving as legal counsel to JFLCO.

**The Materially Incomplete and Misleading Proxy Statement**

21.     On August 31, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Crystal Clean stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Stifel; (iii) potential conflicts of interest faced by Stifel and Company insiders; and (iv) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning Financial Projections for Crystal Clean*

22.     The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

23.     Critically, the Proxy Statement fails to disclose the unlevered free cash flows that the Company was forecasted to generate for the calendar year 2023 through calendar year 2027, relied upon by the Board's financial advisor Stifel in connection with its *Discounted Cash Flow Analysis*.  A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1]  The

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the discounted cash flow analysis method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama*

unlevered free cash flows formed the basis of the *Discounted Cash Flow Analysis* of Crystal Clean that Stifel performed in connection with its fairness opinion. *See* Proxy Statement at 54 ("Stifel calculated projected unlevered free cash flow for the calendar year 2023 through calendar year 2027 as derived by Stifel by applying assumptions that Stifel believed reasonable based on its knowledge of the Company to the projected financial information prepared by Company management and provided to Stifel by Company management and discounted these cash flows and the terminal value to present values[.]").

24.     The Proxy Statement includes a summary of certain of Crystal Clean management's financial projections for calendar years 2023 through 2027. *See id.* at 58. Yet, this summary fails to include the most important projections – the Company's unlevered free cash flows. The Proxy Statement further fails to disclose how the unlevered free cash flows were calculated and the underlying line items. The omission of the unlevered free cash flows and underlying line items renders the projections on page 58 and the summary of Stifel's *Discounted Cash Flow Analysis* of Crystal Clean set forth on page 54 of the Proxy Statement incomplete and misleading, because the Proxy Statement provides a materially incomplete and misleading valuation picture of the Company.

25.     In addition, the Proxy Statement fails to disclose all line items underlying the Company's Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning Stifel's Financial Analyses*

26.     The Proxy Statement fails to disclose material information concerning Stifel's financial analyses.

---

*By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow analysis method to be the preeminent method of valuation).

27.     With respect to Stifel's *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used in the analysis, the Proxy Statement fails to disclose a quantification of: (i) the Company's 2027 EBITDA; (ii) the Company's terminal values; and (iii) the inputs and assumptions underlying the discount rates ranging from 11.8% to 12.8% and 14.4% to 15.4%.

28.     With respect to Stifel's *Selected Company Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies and transactions analyzed by Stifel, respectively.

*Material Misrepresentations and/or Omissions Concerning William Blair's and Company Insiders' Potential Conflicts of Interest*

29.     The Proxy Statement fails to disclose material information concerning Willam Blair's potential conflicts of interest.

30.     For example, with respect William Blair's potential conflicts of interest, the Proxy Statement fails to disclose: (i) the amount of compensation William Blair has received or will receive in connection with its engagement; (ii) the amount of William Blair's compensation that is contingent upon consummation of the Proposed Transaction; and (iii) whether William Blair has performed any services for Crystal Clean, JFLCO or their respective affiliates in the prior two years, and if so, a summary of the services performed and any compensation received in connection with such services.

31.     The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

32.     Specifically, the Proxy Statement fails to disclose whether any of JFLCO's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

33.    The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

34.    According to the Proxy Statement, "[b]etween June 15, 2022, and May 22, 2023, as part of the Company's continuing consideration of its long-term strategic goals and plans, the Company entered into non-disclosure agreements that permitted the exploration of possible transactions involving the sale of the Company with seven potential counterparties[.]" *Id.* at 36. Then, "[o]n April 20, 2023, the Company entered into a non-disclosure agreement with a financial firm ('Party D') to explore possible transactions involving the Company." *Id.* at 37. Thereafter, in connection with the go-shop process, "[t]he Company executed a confidentiality agreement with ten . . . prospective transaction partners[.]" *Id.* at 44. The Proxy Statement fails, however, to disclose the details of the non-disclosure and confidentiality agreements the Company entered into with the prospective bidders, including whether any of the non-disclosure or confidentiality agreements contain "don't ask, don't waive" standstill provisions currently precluding any party from submitting a topping bid for the Company.

35.    In sum, the omission of the above-referenced information renders statements in the "Prospective Financial Information," "Opinion of Stifel, Nicolaus & Company, Incorporated," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Crystal Clean will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Crystal Clean**

36.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Crystal Clean is liable as the issuer of these statements.

38.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Crystal Clean within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Crystal Clean and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

12

48.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Crystal Clean, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  September 18, 2023                          **ACOCELLI LAW, PLLC**


By  */s/ Richard A. Acocelli*
      Richard A. Acocelli
      33 Flying Point Road, Suite 131
      Southampton, NY 11968
      Tel: (631) 204-6187
      Email: racocelli@acocellilaw.com

      *Attorneys for Plaintiff*